UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MAO XIONG,

    Plaintiff,

  v.                                             Case No. 20-CV-1493

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

---

## DECISION AND ORDER

Mao Xiong seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

On November 1, 2016, Xiong injured his left shoulder at work while lifting a box slightly past waist height. (Tr. 297.) Xiong continued to work until he presented to Dr. Pierce Sherrill on March 27, 2017 for a worker's compensation evaluation, noting that his left shoulder pain had slowly worsened over the past several months. (Tr. 387–88.) Xiong stopped working on March 30, 2017 because his employer did not have work for him within his restrictions. (Tr. 297.) On May 3, 2018, Xiong filed a Title II application for a period of

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner. *See* Fed. R. Civ. P. 25(d).

disability and disability insurance benefits alleging disability beginning on March 29, 2017 (Tr. 33) due to pain and numbness in his left arm, hand, and shoulders (Tr. 219). Xiong's application was denied initially and upon reconsideration. (Tr. 33.) Xiong filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on September 23, 2019. (Tr. 89–115.) Xiong, appearing *pro se*, testified at the hearing, as did Stuart Gilkison, a vocational expert. (Tr. 89.)

In a written decision issued December 26, 2019, the ALJ found that Xiong had the severe impairment of left rotator cuff tear, status-post repair. (Tr. 36.) The ALJ found that Xiong did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (*Id.*) The ALJ further found that Xiong had the residual functional capacity ("RFC") to perform light work, with the following limitations: can occasionally crawl and climb ladders, ropes, or scaffolds; can occasionally reach overhead and frequently reach in all other directions with the left (dominant) upper extremity; and must avoid exposure to unprotected heights and dangerous machinery. (*Id.*)

While the ALJ found that Xiong was unable to perform his past relevant work as a machine operator, he determined that given Xiong's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that he could perform. (Tr. 41–42.) As such, the ALJ found that Xiong was not disabled from March 29, 2017, through the date of the decision (December 26, 2019). (Tr. 42.) Xiong requested review of the ALJ's decision to the Appeals Council, providing the Appeals Council with medical records from Bay City Orthopedics and Sports Medicine dated March 14, 2019 through December 10, 2019, that were not part of the record despite predating the ALJ's decision. (Tr. 2.) Xiong

also provided the Appeals Council with records from the same provider dated January 15, 2020 through February 4, 2020, records dated subsequent to the ALJ's decision. (*Id.*) As to the records predating the ALJ's decision, the Appeals Council found that the evidence "does not show a reasonable probability that it would change the outcome of the decision"; whereas the Appeals Council found the records subsequent to the ALJ's decision did not relate to the period at issue and thus did not affect the ALJ's decision. (*Id.*) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Xiong's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing

3

evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to This Case*

The crux of Xiong's argument rests on a series of medical records from Bay City Orthopedics and Sports Medicine, the office of orthopedist Dr. Shawn Hennigan, dated March 14, 2019 through December 10, 2019. Although these records predate the ALJ's December 26, 2019 decision, the records were not before the ALJ.[2] Xiong presented these records to the Appeals Council, who determined that the records would not change the outcome of the ALJ's decision. Xiong argues the Appeals Council erred in this determination. (Pl.'s Br. at 10–17, Docket # 13.) Xiong further argues that even if the Appeals Council did not err, the ALJ erred at the hearing level by failing to procure these records. (*Id.* at 17–22.) Finally, he argues that a record from the relevant time period that the ALJ did consider—an MRI from April 2019—was evaluated without the input of a medical expert. (*Id.* at 22–24.) I will address each argument in turn.

#### 2.1 New and Material Evidence

##### 2.1.1 The Medical Evidence Before the ALJ

As stated above, Xiong injured his left shoulder at work in November 2016. (Tr. 297.) He continued to work until March 30, 2017, when he alleged his shoulder pain worsened and his employer could not provide him work within his restrictions. (*Id.*) In April 2017, Xiong

---

[2] Although Xiong also presented medical records from 2020 to the Appeals Council, he does not challenge the Appeals Council's decision regarding these records. (Pl.'s Br. at 5 n.3, Docket # 13.)

began treating with orthopedist Dr. Harold Schock. (*Id.*) Dr. Schock opined that Xiong may have a rotator cuff tear and ordered an MRI. (Tr. 298–99.) An MRI conducted on April 13, 2017 confirmed a tear of the tissue located on top of the shoulder. (Tr. 375.) After receiving an injection (Tr. 303–04) and engaging in physical therapy with minimal progress (Tr. 392–410), Dr. Schock ultimately recommended surgery (Tr. 308–09). Xiong underwent left shoulder surgery on June 2, 2017. (Tr. 358–62.)

Xiong attended post-operative physical therapy from July 2017 through early November 2017 (Tr. 418–60) but continued to experience left shoulder pain. While Dr. Schock believed Xiong's subjective complaints were out of proportion to the objective findings, he recommended an additional left shoulder MRI to ensure the rotator cuff was structurally intact. (Tr. 330.) An MRI performed on October 23, 2017 showed no evidence of a recurrent labral tear. (Tr. 378.) From November 2017 through January 2018, Xiong attended occupational therapy, but continued to complain of left shoulder pain and difficulty lifting and reaching overhead. (Tr. 461–570.)

Xiong treated with Dr. Schock on January 3, 2018, who noted that Xiong's shoulder was essentially unchanged from his prior visit and that he exhibited inconsistencies upon testing. (Tr. 340.) Dr. Schock recommended a functional capacity evaluation (Tr. 340), which was conducted on January 15 and 16, 2018 (Tr. 345). On January 29, Dr. Schock reviewed Xiong's evaluation and noted that he "continu[es] to have inconsistencies with only a 53% reliability rating on the focused reliability category" and stated that "the results of the FCE may be skewed somewhat by inconsistent effort which has been noted by multiple examiners for him." (*Id.*) Dr. Schock opined that Xiong was "able to work in the full medium to partial medium heavy strength classification in a 8-hour work day as outlined in a functional testing

5

summary from the above-described date." (*Id.*) On February 19, 2018, Dr. Schock assessed permanent work restrictions of medium to partial medium work. (Tr. 358.)

Xiong underwent an independent examination by Dr. Kevin Rosteing in November 2018, in which Xiong's effort were noted as fair to poor (Tr. 372) and suggested a second opinion by an orthopedic surgeon as "it is unclear what his current issue is" (Tr. 373). Dr. Rosteing surmised that Xiong had either a frozen shoulder from improper post-operative PT or psychological issues and limited him to lifting and carrying twenty pounds. (*Id.*)

The record before the ALJ contained two additional records subsequent to Dr. Rosteing's evaluation—chiropractor records for back pain in March and April 2019 (Tr. 571–575) and an additional left shoulder MRI dated April 9, 2019 (Tr. 384). The updated MRI showed a full-thickness perforation of the supraspinatus tendon, post-surgical changes of the AC joint decompression and biceps tendon tenodesis, and post-surgical changes from rotator cuff reattachment and glenoid labrum debridement. (Tr. 385.)

2.1.2    The Medical Evidence Not Before the ALJ

Xiong, however, *did* seek a second opinion, as Dr. Rosteing recommended, and treated with orthopedist Dr. Shawn Hennigan between April 2, 2019 and December 10, 2019. (Tr. 51–88.) It was Dr. Hennigan who ordered the April 9, 2019 MRI (Tr. 52) and found that it showed a probable retearing of the rotator cuff and the tendon healed to the bone (Tr. 59). Dr. Hennigan recommended revision surgery with side-to-side repair and, "given the degenerative nature of the tendon," recommended augmentation with Regeneten[3] performed at the same time. (*Id.*) Dr. Hennigan performed the revision surgery on October 24, 2019. (Tr.

---

[3] The REGENETEN Bioinductive Implant is "an advanced healing solution for biological enhancement and tendon regeneration across all rotator cuff tear types." https://www.smith-nephew.com/professional/products/all-products/regeneten-/(last visited Jan. 13, 2022).

72.) On December 10, 2019, Dr. Hennigan noted that Xiong was doing well, that his pain was improving, and that he was continuing with physical therapy. (Tr. 87.) He noted that Xiong's range of motion with the left shoulder was "acceptable." (*Id.*)

### 2.1.3 Applicable Legal Standard

Xiong argues that the Appeals Council erred in failing to review the ALJ's decision based on the 2019 records from Dr. Hennigan. Whether the Appeals Council's decision is reviewable depends on the grounds on which the Council declined to grant plenary review. *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015). The Seventh Circuit's oft-cited decision in *Stepp* provides a distinction between reviewable and unreviewable Appeals Council decisions. At the time *Stepp* was decided, the applicable regulation, 20 C.F.R. § 404.970(b) (1987), stated that:

> [A]dditional evidence submitted to the Appeals Council will be evaluated only if it is "new and material" and "relates to the period on or before the date of the [ALJ] hearing decision." If the newly submitted evidence satisfies these conditions, the Appeals Council shall incorporate that evidence into the administrative record and shall then evaluate that record, "including the new and material evidence." *Id.* However, the Council will only grant de novo review of the ALJ's decision if it determines, based on the supplemented record, that the ALJ's conclusions are "contrary to the weight of the evidence."

*Id.* (quoting § 404.970(b)). The Seventh Circuit interpretated this regulation as contemplating a three-step process. First, the Appeals Council must determine whether the proffered evidence is new, material, and time-relevant. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). While the regulations do not define "new" and "material," the Seventh Circuit has defined "new" as "'not in existence or available to the claimant at the time of the administrative proceeding,'" *Stepp*, 795 F.3d at 725 (quoting *Perkins*, 107 F.3d at 1296), and "material" as "creates a 'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered,'" *id.* If the newly proffered evidence

7

satisfies these three conditions, then the evidence is made part of the record and the Appeals Council moves on to the second step of evaluating the entire record (both the old and newly proffered evidence) and deciding whether the ALJ's actions appear contrary to the weight of the record. *Id.* If so, then the third step is to proceed to a full, *de novo* review of the case. *Id.*

In *Stepp*, the court found that if the Appeals Council determined at step one that the newly submitted evidence met the regulation's requirements, i.e., that it was new, material, and time-relevant, but denied plenary review based on its conclusion at step two that the record, as supplemented, did not demonstrate that the ALJ's decision was contrary to the weight of the evidence, then the decision was discretionary and unreviewable. *Id.* If, however, the Appeals Council at step one determined that the newly submitted evidence failed to meet the regulation's requirements, i.e., that it was not new, material, and time-relevant, then the court retains jurisdiction to review that conclusion for legal error. *Id.* In other words, the Appeals Council's legal determination is reviewable, whereas its discretionary determination is not.

> Since *Stepp* was decided, however, the regulation was amended as follows:
>
> The Appeals Council will review a case at a party's request or on its own motion if -
> \*\*\*
> [T]he Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 404.970(a)(5). Section 404.970(b) also provides that the claimant must establish "good cause" for not having submitted the evidence for the ALJ's consideration. In the notes to the amendment, the change is explained as follows:

> Under our current rules in 20 CFR 404.970 and 416.1470, the Appeals Council considers additional evidence only if it is new, material, and related to the

period on or before the date of the ALJ's decision. This does not mean, however, that the Appeals Council grants a claimant's request for review of an ALJ's decision whenever additional evidence meets this criteria. In many cases, the Appeals Council adds evidence that meets the criteria to the record, but denies the request for review of the case. Under our current rules, the Appeals Council will review a case in this situation only if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

This final rule provides more clarity to this procedure. Under this final rule, the Appeals Council will grant review of a case based on the receipt of additional evidence if the evidence is new, material, and related to the period on or before the date of the hearing decision and if there is a reasonable probability that the additional evidence would change the outcome of the decision.

Social Security Administration, 81 Fed. Reg. 90,991 (Dec. 16, 2016) (revising 20 C.F.R. §§ 404.970 and 416.1470). Thus, the revised regulation "jettisons any explicit reference to the Appeals Council comparing the ALJ's decision against the weight of the evidence as part of its determination to grant review." *Theresa F. v. Saul*, No. 18-CV-1967, 2019 WL 2949910, at *8 (S.D. Ind. July 9, 2019). Presumably, then, this revised regulation is "providing more clarity" to the procedure by excluding newly proffered evidence from the administrative record *unless* plenary review is granted. This interpretation is echoed in the SSA's Hearings, Appeals, and Litigation Manual, or the "HALLEX,[4] which provides that the Appeals Council will only mark as an exhibit and make part of the official record additional evidence that it determines meets the regulatory criteria found in 20 CFR § 404.970(a)(5)-(b). HALLEX, I-3-5-20 A., *available at* https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html.

---

[4] The HALLEX is a "Social Security Administration policy manual written to convey 'guiding principles, procedural guidance and information to the Office of Hearings and Appeals staff.'" *Cromer v. Apfel*, 234 F.3d 1272, 2000 WL 1544778, at *2 (7th Cir. 2000) (quoting HALLEX, Chapt. I-1-001)). The HALLEX "'also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims' at the Appeals Council." *Id.* As the Seventh Circuit points out, "Circuits are split over whether the HALLEX creates enforceable rights," *Davenport v. Astrue*, 417 F. App'x 544, 547 (7th Cir. 2011), and the Seventh Circuit has not stated on what side of the split it falls.

However, by removing the language of step two that the Seventh Circuit found discretionary and unreviewable, courts in this circuit now question whether the distinction articulated by *Stepp* survives the revision. Recall that under the previous version of the regulation, plenary review is only granted if the newly proffered evidence is: (1) new, material, and time-relevant and (2) the ALJ's decision is contrary to the weight of the evidence (considering both the old and the new evidence). The *Stepp* court found the step one determination reviewable, while the step two determination was not. Under the new regulation, plenary review is only granted if the newly proffered evidence is: (1) new, material, and time-relevant and (2) will change the outcome of the ALJ's decision. If *Stepp* still applies, then is the step one determination still reviewable as the legal determination while the step two decision is unreviewable as the discretionary determination? Herein lies the quandary. The Seventh Circuit, along with other circuits, defines "material" in this context as creating a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp*, 795 F.3d at 725; *see also Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (finding evidence material if there is a reasonable possibility that it would have changed the outcome); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991) (same). Thus, now the presumably non-discretionary determination in step one (i.e., of material) is included in the presumably discretionary determination in step two.

But in Xiong's case, the Appeals Council's order simply states that the newly proffered evidence "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2.) Given the regulation's duplicative requirements, one court in this district aptly posed the following question:

> [T]o the extent § 404.970(a)(5) seeks to draw a distinction between a legal determination (in the first clause) and a discretionary one (in the second), the

10

Case 1:20-cv-01493-NJ   Filed 01/13/22   Page 10 of 16   Document 22

> language is redundant. The second clause ("there is a reasonable probability that the additional evidence would change the outcome of the decision") basically restates the definition of the term "material" which appears in the first clause. If the Council says, as it did here, that the new "evidence does not show a reasonable probability that it would change the outcome of the decision," is this a legal determination of materiality or a discretionary weighing of the evidence?

*Musonera v. Saul*, 410 F. Supp. 3d 1055, 1060 (E.D. Wis. 2019).

So how do courts determine why plenary review was denied in cases such as Xiong's? The *Musonera* court considered that because the HALLEX states that the Appeals Council will exhibit qualifying evidence only, by stating the evidence was not exhibited, this suggests that the additional evidence was rejected as non-qualifying under the regulation. 410 F. Supp. 3d at 1063. Under the old version of the regulation, this reasoning is apt. As the notes to the amendment explain, under the prior rule, the Appeals Council would often add evidence to the record that met the criteria of new, material, and time-relevant, but would still deny plenary review because it found the ALJ's decision was not contrary to the weight of the record, as amended. Thus, if the newly proffered evidence was not exhibited, it must not have met the regulatory criteria of new, material, and time-relevant so as to proceed to the next step for determining plenary review. Stated differently, if the newly proffered evidence did not make it into the record, it was safe to assume that the evidence did not meet the three stated regulatory criteria and thus the decision was reviewable as a legal determination.

One of the stated purposes of the revision, however, was to clarify the appeals procedure by not exhibiting new evidence when plenary review is denied. Again, the HALLEX states that the Appeals Council will only mark as an exhibit and make part of the official record additional evidence that it determines meets the regulatory criteria found in 20 CFR § 404.970(a)(5)-(b). But again, assuming *Stepp* still applies, the new regulatory criteria

11

include both the legal determination (in the first clause) and the discretionary one (in the second clause). Thus, if the newly proffered evidence was not exhibited because it "does not show a reasonable probability that it would change the outcome of the decision," it remains unclear whether plenary review was denied under either the first clause (material) or the second clause ("there is a reasonable probability that the additional evidence would change the outcome of the decision").

While courts in this circuit have called into question *Stepp*'s applicability in light of the regulation's revision, *see Lawson*, 2020 WL 2836775, at *9 (finding the Seventh Circuit's past distinction in *Stepp* unworkable as applied to the revised regulation); *Theresa F.*, 2019 WL 2949910, at *9 (same), the distinction was already painfully imprecise. At bottom, *Stepp* holds that the Appeals Council's legal determinations are reviewable while its discretionary determinations are not. And while a decision on time-relevance and newness are non-discretionary determinations, whether evidence is "material," when defined as the Seventh Circuit has (i.e., creating a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered), is inherently discretionary. Thus, when the Appeals Council declines plenary review because the newly proffered evidence would not change the decision's outcome, the decision is discretionary. *See Jandt v. Saul*, No. 18-CV-737, 2019 WL 4464763, at *5 (E.D. Wis. Sept. 18, 2019) (finding the Appeals Council's statement that the evidence "does not show a reasonable probability that it would change the outcome of the decision" was a decision to decline plenary review due to the plaintiff's "failure to demonstrate that the ALJ's decision was contrary to the weight of the evidence" and thus was a discretionary, unreviewable decision).

12

While other courts in this circuit disagree, choosing to review the Appeals Council's decision based on the perceived ambiguity in the Appeals Council's decision, *see Musonera*, 410 F. Supp. 3d at 1062; *Teresa F.*, 2019 WL 2949910, at *9, I do not find the Appeals Council's grounds for denying review ambiguous. As in *Jandt*, the Appeals Council denied review of Xiong's newly proffered evidence because he failed to show that it would have changed the outcome of the ALJ's decision. This is a discretionary and unreviewable decision.

### 2.2 Failure to Develop the Record

Xiong alternatively argues that even if the Appeals Council did not err, the ALJ erred by failing to procure the March 14, 2019 through December 10, 2019 records. Although I disagree with Xiong regarding review of the Appeals Council's decision, I agree that remand is required to reconsider these records. "While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). This duty is enhanced when a claimant (like Xiong) appears without counsel; then the ALJ must "scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts." *Id.* (internal quotations and citation omitted). Although *pro se* litigants must furnish some medical evidence to support their claim, the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information. *Id.* The court, however, "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Id.* Thus, a "significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in

13

developing the record fully and fairly." *Id.* An omission is significant only if it is prejudicial. *Id.*

Again, Xiong treated with Dr. Hennigan at the BayCare Orthopedics and Sports Medicine Center in Green Bay from March 19, 2019 through December 10, 2019, including having a second shoulder surgery. During the administrative hearing, Xiong informed the ALJ that his doctor stated he needed a second surgery, however, Xiong said the provider was Dr. Jacobson at either Bellin or Aurora in Green Bay. (Tr. 102, 108.) The ALJ acknowledged that "Dr. Jacobson's" records needed to be requested. (Tr. 108.) Although Xiong provided inaccurate information at the hearing, he subsequently followed-up with a letter dated October 14, 2019 in which he stated his second surgery was scheduled for October 24 with Dr. Shawn Hennigan. (Tr. 293.) Thus, given the ALJ's awareness of these new records (including a new surgery) and Xiong's *pro se* status, the ALJ erred in failing to obtain these additional records.

This omission, however, is only significant if it is prejudicial. Xiong argues that the omission is prejudicial because the additional records show ongoing shoulder pain and surgical treatment consistent with his general allegations and argues that crediting his allegations based on the missing evidence would lead to greater limitations in reaching, handling, and fingering. (Pl.'s Br. at 21.) Although the record immediately prior to the ALJ's decision—a December 10, 2019 record from Dr. Hennigan—shows that Xiong was doing well following the surgery, that his pain was improving, and that the range of motion of his left shoulder was "acceptable," (Tr. 87), it also notes that he was still undergoing physical therapy and limited to lifting five pounds with his left arm (Tr. 87–88). In discounting Xiong's allegations of disabling pain, the ALJ specifically noted that the record did not contain

14

evidence of "repeated surgeries." (Tr. 38.) The ALJ also considered that Xiong obtained chiropractic care for his back during March and April 2019 with no complaints of shoulder pain or limitations (*id.*) when in fact it was in April 2019 that Xiong reported ongoing left shoulder pain and limited range of motion (Tr. 51) resulting in Dr. Hennigan recommending revision surgery (Tr. 59). "Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). The ALJ was clearly aware, at a minimum, that a treating provider recommended a second shoulder surgery, and even acknowledged a need to obtain those treatment records. (Tr. 109.) In rendering his decision, however, the ALJ makes no mention of these records and in fact uses Xiong's purported lack of treatment or repeat surgeries as justification in denying his claim. For these reasons, I find Xiong has established prejudice from the ALJ's failure to develop the record, requiring remand.

Because remand is required for the ALJ to consider Xiong's additional treatment records, I will not address his argument that the ALJ played doctor in considering the April 2019 MRI. (Pl.'s Br. at 7–8.)

## CONCLUSION

Xiong, appearing *pro se* at his administrative hearing, informed the ALJ about continuing treatment and a recommendation for additional surgery. Despite acknowledging the need to obtain these records, the ALJ failed to do so and then held Xiong's lack of treatment against him. Although I disagree with Xiong that I could review the Appeals Council's discretionary decision to deny review based on its conclusion that these records would not have changed the ALJ's decision, I agree remand is required.

15

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of January, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge